**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION**

RONNIE EUGENE DENTON, as
Administrator of the Estate of
Vicki Lynn Denton, and RONNIE
DENTON and LESLIE DENTON,
as Permanent Guardians of
DALTON BRETT DENTON, a
minor,

   Plaintiffs,

  v.

DAIMLERCHRYSLER
CORPORATION,

   Defendant.

:
:
:
:
:
:
:
:
:
:
:
:
:
:
:
:
:
:

CIVIL ACTION NO.
1:06-CV-2682-RWS

## ORDER

   This case is before the Court on Defendant's Renewed Motion for

Judgment as a Matter of Law [Dkt. No. 210], Defendant's Motion for a New

Trial [Dkt. No. 211], Defendant's Motion for Judicial Review of Clerk's Action

Taxing Costs and Objections to Plaintiffs' Bill of Costs [Dkt. No. 217] and

Defendant's Motion to Stay Pending Appeal [Dkt. No. 218].

**Background**

This case involves Plaintiffs' allegation that a manufacturing defect existed in Ms. Vicki Denton's supplemental occupant restraint system resulting in her death. Plaintiffs contended that Chrysler was responsible for Ms. Denton's death because the driver supplemental restraint system (airbag) did not deploy as designed in a collision that occurred on November 11, 2004. A jury trial was conducted, and the jury returned a verdict in favor of the Plaintiffs. Defendant now moves to stay, moves for a new trial, moves for judgment as a matter of law, and moves for judicial review of the costs taxed against them.

**Analysis**

**I. Motion to Stay**

Defendants have moved the Court to stay this case pending the appeal of another case involving the Georgia statute on seat belt evidence, O.C.G.A. § 40-8-76.1(d). In federal courts, "the general principle is to avoid duplicative litigation." I.A.Durbin, Inc. v. Jefferson Nat'l Bank, 793 F.2d 1541, 1551 (11th Cir. 1986) (quoting Col. River Water Conservation Dist. v. United States, 424 U.S. 800, 817 (1976)). The principle rests on considerations of "wise judicial

2

administration, giving regard to conservation of judicial resources and comprehensive disposition of litigation." Kerotest Mfg. Co. v. C-O-Two Fire Equp. Co., 342 U.S. 180, 183 (1952). Trial courts are afforded broad discretion to stay proceedings for the purposes of judicial economy if another proceeding pending in federal court may affect the outcome or finality of the proceedings before the court. Durbin, 793 F.2d at 1551-52. To warrant a stay, neither the parties nor the issues need be identical. Landis v. North American Co., 299 U.S. 248, 254 (1936).

The Court concludes that the circumstances of this case do not warrant a stay for the Eleventh Circuit to rule on the interpretation and constitutionality of Georgia's seatbelt statute, O.C.G.A. § 40-8-76.1(d). The Court is not convinced that the Eleventh Circuit will reach the issue of the constitutionality of the statute. Six appellate issues relating to crashworthiness are raised in the Reynolds appeal, only one of which relates to seat belt evidence. The Eleventh Circuit is bound address each of these issues before addressing the constitutional question. Lyng v. Northwest Indian Cemetery Protective Assoc., 485 U.S. 439, 445, 108 S. Ct. 1319 (1988) ("A fundamental and longstanding principle of judicial restraint requires that courts avoid reaching constitutional

3

questions in advance of the necessity of deciding them.").  Therefore, if the

Eleventh Circuit decides any of the other issues raised in the defendant's favor,

it will not address the constitutional question at all.

Furthermore, even if the Eleventh Circuit were to reach the issue of the

constitutionality of the seat belt statute, it is unlikely that such a decision would

provide clear guidance to the Court in this case.  The issue presented here is

distinct from that in the *Reynolds* case because here, unlike in *Reynolds*,

evidence pertaining to seat belts was introduced during trial and discussed

freely during the course of the trial.  A much more analogous case would be

King v. Davis, 287 Ga. App. 715, 652 S.E.2d 585 (2007), in which seat belt

evidence was introduced by Defendant without objection from Plaintiff.  The

Georgia Court of Appeals held that even though seat belt evidence had been

admitted during trial, the appropriate jury charge would still instruct the jury not

to consider any evidence of the failure of an occupant of a motor vehicle to

wear his or her seat belt as evidence of negligence or causation.  Id. at 586-87.

The Court finds this case to be persuasive and duly on point in the case at bar.

And finally, a stay will certainly prejudice Plaintiffs, who are already

likely to face many challenges collecting their judgment due to Chrysler's

financial situation.  For all of these reasons, Defendant's Motion to Stay is hereby **DENIED**.


## II. Motion for a New Trial

Defendant has submitted a Motion for New Trial [211], arguing that multiple errors at trial combined to prejudice Chrysler's ability to defend itself in this action.  A litigant renewing a motion for judgment as a matter of law, as Chrysler is here,  may join in its request a motion for a new trial under Federal Rule of Civil Procedure. 59.  While the considerations governing the resolution of such a motion are analogous to those that dictate the disposition of a motion for judgment as a matter of law, the showing a moving party must make to obtain a new trial is less arduous than that required in the context of Federal Rule of Civil Procedure 50.

A court should grant a motion for a new trial when "the verdict is against the clear weight of the evidence or will result in a miscarriage of justice, even though there may be substantial evidence which would prevent the direction of a verdict." Lipphardt v. Durango Steakhouse of Brandon, Inc., 267 F.3d 1183, 1186 (11th Cir. 2001).  A new trial may be ordered for "evidence improperly

AO 72A
(Rev.8/82)

admitted, prejudicial statements by counsel, and improper charge to the jury or newly discovered evidence." Deas v. PACCAR, Inc., 775 F.2d 1498, 1504 (11th Cir. 1985). "[T]he trial judge necessarily must be allowed wide discretion in granting or refusing a new trial." Id. A new trial is warranted only where error has caused substantial prejudice to the affected party. See Peat, Inc. v. Vanguard Research, 378 F.3d 1154, 1162 (11 th Cir. 2004); see also ATD Corp. v. Lydall, Inc., 159 F.3d 534, 549-50 (Fed. Cir. 1998).

First, Defendant claims that Plaintiffs waived the right to preclude the jury from considering seat belt evidence because they affirmatively chose to present evidence regarding Ms. Denton's seat belt use in the accident, because they never objected to the admission of seat belt evidence at trial, and because they did not ask for the jury instruction that was given. According to Defendant, Plaintiffs waived any right to preclude the jury from considering the evidence.

However, Defendant fails to recognize that OCGA § 40-8-76.1(d) is not a statute that merely confers waivable rights on a party. Rather, this statute provides the substantive law which courts must apply to any case involving an automobile. As explained by the Georgia Court of Appeals, OCGA § 40-8-

6

76.1(d) "prohibits the use of evidence of the failure of an occupant of a motor vehicle to wear a seat safety belt as evidence of negligence or causation or 'to diminish any recovery for damages' in any civil action." King v. Davis, 287 Ga. App. 715, 715-16, 652 S.E.2d 585 (2007).

The law in Georgia regarding the use of seat belt evidence is clear.

O.C.G.A. § 40-8-76.1(d) provides as follows:

> The failure of an occupant of a motor vehicle to wear a seat safety belt in any seat of a motor vehicle which has a seat safety belt or belts shall not be considered evidence of negligence or causation, shall not otherwise be considered by the finder of fact on any question of liability of any person, corporation, or insurer . . . and shall not be evidence used to diminish any recovery for damages arising out of the ownership, maintenance, occupancy, or operation of a motor vehicle.

O.C.G.A. § 40-8-76.1(d). Again, Georgia courts interpreting the statute have consistently held that evidence of an occupant's failure to wear a safety belt should not be considered by the jury "in any civil action." C.W. Matthews Contracting Co. v. Gover, 263 GA. 108, 110, 428 S.E.2d 796 (1993). Both state and federal courts in Georgia have noted that the language of the statute "is as broad and clear as it first appears." McCurdy v. Ford Motor Co., 2007 WL 121125 (M.D. Ga. Jan 11, 2007); Hockensmith v. Ford Motor Co., 2003

WL 25639639 (N.D. Ga. April 17, 2003) ("[T]he plain unambiguous language of the statute precludes the consideration of any evidence regarding an occupant's failure to wear a safety belt."); Crosby v. Cooper Tire & Rubber Co., 240 Ga. App. 857, 866, 524 (1999) ("The language of the act is plain and unambiguous . . ."). Indeed, the statute's express legislative purpose is "to provide that a failure to use seat safety belts may not be introduced into evidence in any civil action." 1988 Ga. Laws, p. 31. In short, Georgia's seat belt statute prohibits the jury's consideration of the use or nonuse of a seat belt for any purpose, and the Court's instruction accurately reflected this substantive law.

Defendant boldly claims that during the pre-trial conference, the Court "implicitly ruled all seat belt evidence admissible and thus relevant for the jury's consideration on the claims and defenses at issue in this case." Def.'s Br. In Supp. Of Mot. For New Trial, [Dkt. No. 211] at 6. Prior to the beginning of trial, Plaintiffs informed the Court of their intention to introduce seat belt evidence. Tr. 186:22-187:4. At the time, the Court determined that fairness required that it allow Defendant to introduce similar evidence, but the Court made no comment regarding whether the jury would be allowed to consider

8

such evidence. Tr. 187:5-8. In fact, the Court stated that it would "allow both parties to submit proposed charges on that issue and then [it would] rule on it and give what [it thought was] the appropriate charge." Tr. 188:24-198:2. In no way did the Court indicate to the parties, expressly or implicitly, that it would instruct the jury to consider evidence regarding the use or nonuse of seatbelts. To the extent that Defendant built its strategy around the assumption that the Court would allow the jury to consider seat belt evidence, it did so at its own risk. A new trial is not warranted on these grounds.

Second, Chrysler argues that the Court's charge to the jury was a misrepresentation of Georgia law because the jury should have been allowed to consider the seat belt evidence with respect to Chrysler's overall restraint system in the context of Chrysler's affirmative defenses. At the conclusion of trial, the Court instructed the jury that "under the law applicable to this case, Vicki Denton's use or nonuse of a seat belt on the day of the accident may not be considered by you on the question of liability nor to reduce any recovery for damages." Jury Instructions, [Dkt. No. 196] at 7. During their deliberations, the jurors submitted a question to the Court, asking "in which verdict questionnaire nos. can we consider the use or nonuse of the seat belts, if any?"

9

Jury Questions, [Dkt. No. 198] at 1. The Court responded that "the use or nonuse of the seat belts my not be considered as to any of the claims." Id.

It is noteworthy that Defendant never requested a charge instructing the jury that they could consider evidence regarding how the seat belt functioned as a part of the overall restraint system. Having failed to request such a charge, Defendant waived any objection to its absence.

Furthermore, there is no evidence that the jury was confused with regard to this issue. The Court's charge on seat belt evidence was clear and referred only to *Vicki Denton's use or non-use of the seat belt* on the day of the accident. The charge is an accurate and complete statement of the law in Georgia. Indeed, the jury specifically asked whether they could "consider *the use or nonuse of the seat belts*." Jury Question, [Dkt. No. 198] at 1 (emphasis added). There is no suggestion that the jury was confused about whether they could consider evidence of the seat belt's function as part of the overall restraint system. Therefore, a new trial is not warranted on these grounds.

Third, Chrysler argues that the medical-causation testimony of Dr. Burton should not have been admitted because, Defendant alleges, Dr. Burton did not rely on any scientific literature or peer review articles and did not

10

perform tests or exemplar studies in support of his opinion that a supplemental

airbag restraint deployment would have prevented Ms. Denton's abdominal

injuries in the accident. After considering the record, the Court concludes that

Defendant waived any objection to the medical causation opinions of Dr.

Burton.

Local Rule 26(c) provides that

> [a]ny party objecting to an expert's testimony based upon
> Daubert v. Merrell Dow Phars., Inc., 509 U.S. 579, 113 S.
> Ct. 2786 (1993) shall file a motion no later than the date that
> the proposed pretrial order is submitted. Otherwise, such
> objections will be waived, unless expressly authorized by
> court order based upon a showing that the failure to comply
> was justified.

L.R. 26(c). Defendant did file a timely Daubert motion as to Dr. Burton's seat

pan testimony, but there was no mention of or objection to Dr. Burton's medical

causation testimony. Defendant has made no showing that its failure to object

to this testimony was justified. Dr. Burton testified on direct, cross, redirect,

and recross and during rebuttal on direct, cross, and redirect. Not once did

Defendant raise a substantive objection to any of Dr. Burton's testimony, nor to

his opinions on medical causation. Because Defendant failed to follow the local

rules and failed to properly object during trial to the contested testimony,

Defendant has waived any objections to Dr. Burton's testimony. Thus, a new trial is not warranted on these grounds.

Fourth and finally, Chrysler argues that the jury should have been instructed that it could consider Ms. Denton's failure to respond to the recall notice as an "intervening act." Defendant submitted a request to charge on this issue, which stated

> If you find that Vicki Denton received a recall notice, but failed to exercise ordinary care in responding to that notice, then you should also determine whether her alleged negligence in responding to Recal B24 is an intervening act sufficient to break any connection between the alleged negligence of Chrysler and injuries suffered by Vicki Denton and is thus sufficient to become the sole proximate cause of Vicki Denton's injuries.

The Court rejected the instruction, explaining that the Court did not "think the charge as requested was a complete statement of the law." Tr. 1309:21-22. The Court further explained that "intervening cause requires substantial findings by the jury in terms of the nature of that intervening cause that [the Court didn't] think that charge set out." Tr. 1309:22-24.

Defendant argues that even if the proposed charge did not include a list of the required findings, the Court was under a duty to instruct the jury properly

AO 72A
(Rev.8/82)

on this matter. In other words, Chrysler argues that even if it omitted an element from its intervening cause instruction, the Court should have amended the instruction and given what it thought to be the complete version.

However, the Court need not instruct the jury on a theory that does not apply to the facts of the case. The theory of an intervening act involves an independent act of a third party that was unforeseeable to the Defendant. See, e.g., Ontario Sewing Machine Co., Ltd. v. Smith, 275 Ga. 683, 572 S.E.2d 533 (2002). Defendant's attempt to apply this theory to Vicki Denton's actions simply does not comport with the law of an intervening cause.

Moreover, as the Court noted during the charge conference, there were a number of instructions which adequately covered Defendant's theory that Vicki Denton's conduct was the sole proximate cause of her injuries, including assumption of risk, avoidance of consequences, contributory negligence, and comparative negligence. Tr. 1288:18–1290:13. The Court's instructions to the jury were accurate and complete in this regard.

For all of these reasons, Defendant's Motion for a New Trial [211] is hereby **DENIED**.

13

AO 72A
(Rev.8/82)

### III. Motion for Judgment as a Matter of Law

As mentioned above, Chrysler has also renewed its motion for judgement as a matter of law [Dkt. No. 210]. Under Federal Rule of Civil Procedure 50,

> [i]f during a trial by jury a party has been fully heard on an issue and there is no legally sufficient evidentiary basis for a reasonable jury to find for that party on that issue, the court may determine the issue against that party and may grant a motion for judgment as a matter of law against that party with respect to a claim or defense that cannot under the controlling law be maintained or defeated without a favorable finding on that issue.

FED. R. CIV. P. 50(a)(1). If such a motion is made prior to the submission of the case to the jury but is denied by the Court, the moving party may renew the motion within ten days after entry of the judgment. FED. R. CIV. P. 50(b).

Judgment should be entered in favor of the movant only if, drawing all factual inferences and resolving all credibility determinations in favor of the nonmoving party, reasonable jurors could not have arrived at a contrary verdict. Munoz v. Oceanside Resorts, Inc., 223 F.3d 1340, 1344-45 (11th Cir. 2000). When conducting this inquiry, a court "should review all of the evidence in the record." Reeves v. SandersonPlumbing Prods., Inc., 530 U.S. 133, 150 (2000).

AO 72A
(Rev.8/82)

In its Renewed Motion for Judgment as a Matter of Law, Defendant raises three primary arguments, which the Court shall address in turn. First, Defendant argues that Ms. Denton's failure to respond to Chrysler's recall notice requires a judgment in favor of Chrysler. Second, Defendant contends, once again, that the testimony of Plaintiff's expert Dr. Burton on medical causation should have been excluded under Rule 702. Finally, Defendants indicate that Plaintiffs offered no evidence from which a reasonable jury could conclude that it was more likely than not that any defect in the vehicle's driver airbag system existed at the time it left Chrysler's manufacturing plant. For each of these reasons, Defendants ask the Court to enter judgment as a matter of law for Chrysler.

First, Defendant argues that Ms. Denton's failure to respond to the recall notice sent to her by Chrysler requires judgment as a matter of law in favor of Defendant. Chrysler sent Ms. Denton a recall notice warning her that "[a] failed clockspring will cause the AIRBAG warning light to either remain on . . . or illuminate intermittently while you are driving. If this occurs, contact your dealer immediately to have the airbag system inspected." (Def. Ex. 357 [Recall Notice].) The recall notice further warned that "[t]his could cause the driver's

airbag, horn and/or speed control system . . . to be inoperative" and that "[a]n inoperative driver's airbag will not deploy and can result in increased injury to the driver in a frontal crash." (Id.) Plaintiffs did not contend that the recall was sent to the wrong address or that Ms. Denton did not receive it. Therefore the Court instructed the jury that a presumption arises that she did in fact receive and read the notice. See generally, Crenshaw v. Georgia Underwriting Ass'n, 202 Ga. App. 610, 610-11 (1992); Edmondson v. Air Serv. Co., 123 Ga. App. 263, 263-64 (1971).

Defendant argues that the Court's statements at the summary judgment phase of the case are binding for purposes of trial. The Court stated in its Order granting partial summary judgement on punitive damages that "there is no genuine issue of material fact with regard to whether the clockspring warning light had been on for a significant period of time prior to the accident at issue." Order of December 2, 2008, [Dkt. No. 118] at 7. Thus, Defendant argues, once the jury determined by its verdict that Chrysler's recall was not negligent, and therefore that Ms. Denton received an adequate warning of the risks involved in continued use of the vehicle without repairs being made, any recovery for the injuries sustained by Ms. Denton was barred because under Georgia law, "if the

16

user or consumer discovers the defect and is aware of the danger, but nevertheless proceeds unreasonably to make use of the product, he is barred from recovery." Center Chemical Co. v. Parzini, 234 Ga. 868, 870 (1975). Chrysler contends that since Ms. Denton was aware of the alleged defect and the risk it posed, but continued to use the product without having repairs made to alleviate the danger, her continued use was an assumption of the risk barring recovery for damages

It is well established that, "[e]xcept in cases where the evidence is plain, palpable and undisputed, issues of negligence, contributory negligence, comparative negligence, proximate cause, [and] assumption of risk . . . are questions for the jury and are not susceptible of summary adjudication." Anderson v. Sears Roebuck & Co., 292 Ga. App. 603, 606, 664 S.E.2d 911 (2008); see also Cent. of Ga. R.R. Co., 163 Ga. App. 622, 623, 295 S.E.2d 369 (1982) ("In Georgia questions of diligence and negligence, including contributory negligence, are questions for the jury and this court will not interfere with those decisions, except in plain and indisputable cases."). "As a general rule, whether a party assumed the risk of his injury is an issue for the jury that should not be decided by summary judgment unless the defense is

conclusively established by plain, palpable and undisputed evidence." Findley v. Griffin, 292 Ga. App. 802, 809, 666 S.E.2d 79 (2007) (citing Turner v. Sumter Self Storage Co., 215 Ga. App. 92, 94(3), 449 S.E.2d 618 (1994).

Here, the issue of whether the airbag warning light was illuminated on the Denton vehicle and the issue of whether the mileage on the vehicle when the recall warning was received was over or under 70,000 miles are both contested issues of fact. Although both parties' experts testified that the airbag light was illuminated, Leslie Denton told the jury that she rode in the vehicle less than two weeks before the accident and that the airbag warning light was not illuminated. (Tr. 280:17-19.) Leslie Denton's testimony creates an issue of fact. The jury weighed the evidence on both sides and reached a verdict in favor of Plaintiffs. The Court will not now substitute its own judgment for that of the jury.

The only case that Chrysler cites holding as a matter of law that a plaintiff had assumed the risk by allowing time to pass without obtaining repairs described in a safety recall is an unpublished opinion carrying no precedential value. J.H.O.C. v. Volvo Trucks North America, Inc., 2008 WL 5264666 (11th Cir. Dec. 18, 2008). Furthermore, this case was based on

contributory negligence law in Alabama, not Georgia.  Unlike Georgia,

Alabama is a pure contributory negligence state, rendering this case inapposite

here. Alabama Power Co. v. Schotz, 215 So. 2d 447 (Ala. 1968).

Further, Defendant argues that the Court's statement regarding the

clockspring warning light at the summary judgment phase is now the "law of

the case" and that Plaintiffs are not permitted to create a factual dispute on this

point.  The Court does not agree.

> The "law of the case" doctrine is "the rule under which the
> trial court and appellate courts are bound by any findings of
> fact or conclusions of law made by the appellate courts in a
> prior appeal of the case at issue." United States v. Burns,
> 662 F.2d 1378 (11th Cir.1981).  The purpose of the doctrine
> is to bring an end to litigation by foreclosing the possibility
> of repeatedly litigating an issue already conclusively
> decided. White v. Murtha, 377 F.2d 428 (5th Cir.1967). . .
>
> To hold that a district court must rigidly adhere to its own
> rulings in an earlier stage of a case would actually thwart the
> purpose of the doctrine. New developments or further
> research often will convince a district court that it erred in an
> earlier ruling, or the court may simply change its mind. We
> believe it would be wasteful and unjust to require the court
> to adhere to its earlier ruling in such an instance.

Whirlpool Corp. v. U.M.C.O. Intern. Corp., 748 F.Supp. 1557, 1561 (S.D. Fla.

1990) (citing  Robinson v. Parrish, 720 F.2d 1548 (11th Cir.1983)); see also

Compania de Elaborados de Café v. Cardinal Capital Management, Inc., 401 F. Supp. 2d 1270, 1285 (S.D. Fla. 2003) (holding that earlier decisions in the case did not preclude the entry of summary judgment).  Moreover, the Court expressly stated in its summary judgment order that "[t]he Court makes no formal findings with regards to the facts stated herein."  Order of December 2, 2008, [Dkt. No. 118] at 1, n.1.  Thus, Defendant's argument that there can be no contested issue of fact on this point fails, and for all of these reasons, judgment as a matter of law is not appropriate on these grounds.

Second, Defendant argues once again that because Dr. Burton's testimony should have been excluded, Plaintiffs lack competent evidence of medical causation.  As explained above, Defendant failed to raise an objection to this testimony before or during the trial.  Furthermore, the Court notes that Dr. Burton is well-qualified to offer opinions regarding medical causation and also offered ample support for his opinions.  Thus judgment as a matter of law on these grounds would be inappropriate.

Third and finally, Defendant argues that Plaintiffs failed to make a prima facie case of a manufacturing defect because there was no evidence of a defect when the vehicle left the manufacturer.  However, in Georgia, it is well-

20

established that "the existence of a manufacturing defect in a products liability case may be inferred from circumstantial evidence." <u>General Motors Corp. v. Blake,</u> 237 Ga. App. 426, 430, 515 S.E.2d 166 (1999). Further, a product recall can serve as circumstantial evidence sufficient to establish the defect. <u>Rose v. Figgie Intern., Inc.,</u> 229 Ga. App. 848, 853-54, 495 S.E.2d 77 (1997). During the course of the trial, Plaintiffs presented the jury with evidence that Defendant issued a recall for model year 1996 through 1998 Dodge, Plymouth, and Chrysler minivan vehicles because they failed to properly assemble the clockspring in some vehicles and that the Denton vehicle suffered the consequences of the defect described in the recall. The jury duly weighed this evidence against that provided by the defense, and the verdict reached by the jury was that the vehicle suffered from this defect. Defendant fails to provide a sufficient reason for the Court to now substitute its own judgment for that of the jury.

For all of these reasons, Defendant's Renewed Motion for Judgment as a Matter of Law is hereby **DENIED**.

AO 72A
(Rev.8/82)

## IV. Defendant's Motion for Judicial Review of Clerk's Action Taxing Costs and Objections to Plaintiffs' Bill of Costs

Defendant, pursuant to Federal Rule of Civil Procedure 54(d), has moved the Court to review the Clerk's action taxing costs to Chrysler and has also served objections to Plaintiffs' Bill of Costs filed in this action. [Dkt. No. 217]. Plaintiffs filed their Bill of Costs in the amount of $35,859.60. [Dkt. No. 214].

Rule 54(d) allows for awarding of costs to the prevailing party. The costs that may be taxed against the non-prevailing aprty are defined in 28 U.S.C. § 1920 as follows:

> (1) Fees of the clerk and marshal;
>
> (2) Fees of the court reporter for all or any part of the stenographic transcript necessarily obtained for use in the case;
>
> (3) Fees and disbursements for printing and witnesses;
>
> (4) Fees for exemplification and copies of papers necessarily obtained for use in the case;
>
> (5) Docket fees under section 1923 of this title;
>
> (6) Compensation of court appointed experts, compensation of interpreters, and salaries, fees, expenses, and costs of special interpretation services under section 1828 of this title.

The power to tax costs pursuant to Rule 54(d) is not an expansive one; rather, "absent explicit statutory or contractual authorization for the taxation of other [expenses], federal courts are bound by the limitations set out in . . . 28 U.S.C. § 1920." Crawford Fitting Co. v. J.T. Giggons, Inc., 482 U.S. 437, 445, 107 S. Ct. 2494, 2499, 96 L. Ed.2d 385 (1987). Consequently, the Court may not tax any cost unless it falls within one of the categories enumerated by the statute. Id.; see also Goodwall Constr. Co. v. Beers Constr. Co., 824 F. Supp. 1044, 1063 (N.D. Ga. 1992). Plaintiffs have voluntarily withdrawn the $300 cost for a van inspection video from their Bill of Costs, the $1862.50 cost for mediation expenses, the $3,800.00 cost for medical trial exhibits, and the $118.00 cost for investigative services. The Court shall now address the remaining contested expenses.

First, Defendant challenges certain costs associated with Plaintiffs' obtaining transcripts of various depositions, including shipping and handling charges and the expense of obtaining exhibits to depositions. It is well-established that "[t]hough 1920(2) does not specifically mention a deposition . . . depositions are included by implication in the phrase 'stenographic transcript.'" United States v. Kolesar, 313 F.2d 835, 837-38 (5th Cir. 1963).

Indeed, the Eleventh Circuit has more recently found that the "[t]axation of deposition costs is authorized by § 1920(2)." <u>EEOC v. W&O, Inc.</u>, 213 F.3d 600, 620 (11th Cir. 2000). The Court concludes that the shipping and handling charges and the costs of obtaining exhibits to the depositions at issue are proper and reasonable, and the Court upholds those costs as taxed. However, incidental expenses associated with depositions are not recoverable. The Court finds that Plaintiffs are not entitled to recover charges for CD-Roms, rough drafts, e-mail transcripts, and ASCII files and will reduce the costs accordingly.

Second, Defendant challenges Plaintiffs' fees for the trial transcript. The prevailing party is clearly entitled to "[f]ees for printed or electronically recorded transcripts necessarily obtained for use in the case." 28 U.S.C. § 1920(2). Defendant argues that Plaintiffs should not be able to recover the cost of the trial transcript because it was not "indispensable" or necessary for use in this case. Considering the voluminous post-trial motions filed by Defendant following the conclusion of trial–including a Motion for a New Trial, a Renewed Motion for Judgment as a Matter of Law, and a Motion to Stay–the Court finds this argument lacks merit. The trial transcripts were necessary for Plaintiffs' to properly respond to these motions, and the Court upholds the

taxing of this cost. After reducing the costs of the incidental expenses for which Plaintiffs may not recover, Plaintiffs are entitled to $12,501.49 for printed or electronically recorded transcripts.

Third, Defendant disputes costs awarded for printing and copying. Pursuant to 28 U.S.C. § 1920, these costs are recoverable if the copies were "necessarily obtained for use in the case." Furthermore, Plaintiffs "must come forward with evidence showing the nature of the documents copied including how they were used or intended to be used in the case." Goodwall Constr. Co., 824 F. Supp. at 1065. Defendant specifically challenges the cost of copies printed from data discs. Plaintiffs have explained that these documents were obtained through discovery and were unusable in the form in which they received them, particularly as they were organized on the disc provided by Defendant. The Court finds Plaintiffs' explanation reasonable and concludes that these costs are proper.

Defendant also challenges copy costs for discovery materials, trial exhibits, etc. In their Response, Plaintiffs reduced this portion of their claim from $6,385.25 to $2,298.25 and offered more specificity for the copies included in the claim. Defendant urges the Court to deny the claim because of

25

lack of documentation and based upon the rate of the copies, $0.25 per copy. A

portion of this charge is for copies of medical record. However, Plaintiffs have

already charged $2,527.74 for copies of medical records and offer no

clarification for this additional charge. The Court will disallow the additional

charge for copies of medical records. "A review of other cases in this circuit

indicates that a rate of $.10 to $.14 per copy is reasonable." <u>George v. Fla.</u>

<u>Dep't of Corr.</u>, No. 07-80019-CIV, 2008 WL 2571348, *4 (S.D. Fla. May 23,

2008). The Court will allow a charge of $.14 per copy for a total of $1,208.06

for discovery materials, trial exhibits, etc. The total for Plaintiffs' fees and

disbursements for printing shall be reduced to $6,731.07.

Next, Defendant challenges Plaintiffs' witness fees. A prevailing party is

entitled to "fees and disbursements for . . . witnesses." 28 U.S.C. § 1920(3).

Under 28 U.S.C. § 1821, a witness shall be paid an attendance fee, travel

expenses, and a subsistence allowance. A witness "shall utilize a common

carrier at the most economical rate reasonably available" and a "receipt or other

evidence of actual cost shall be furnished." 28 U.S.C. § 1821(c)(1). Defendant

does not contest the statutory fee of $40.00 paid to each testifying witness.

AO 72A
(Rev.8/82)

The Court agrees with Defendant that the mileage costs for Louise Kelley and Henry Miller should be calculated at a rate of $0.55 per mile, as that is the applicable rate for the time period during which they traveled. Therefore, Plaintiffs shall only be allowed taxable costs for $59.40 each, not $63.60.

Furthermore, the Court agrees with Defendant that Plaintiffs have not met their burden by providing documentation supporting subsistence fees that they seek to recover for Ronald Kirk or Geoffrey Mahon. Plaintiffs have not made a proper showing that their witnesses used the "most economical rate reasonably available" for their air transportation to and from the trial. 28 U.S.C. § 1821(c)(1). Indeed, Plaintiffs have submitted airline ticket receipts for Mr. Kirk and Mr. Mahon in the amount of $570.00 and $719.00 respectively. Mr. Kirk's ticket is marked as First Class, thus further demonstrating that Plaintiffs failed to show that their witnesses "utilize[d] common carrier[s] at the most economical rate reasonably available." 28 U.S.C. § 1821. The recovery of travel costs for these experts totaling $1289.00 shall be disallowed. Plaintiffs have further failed provide proof that these amounts should be reduced to the "most economical rate reasonably available." 28 U.S.C. § 1821. For this reason, Plaintiffs cannot recover the requested witness travel expenses.

AO 72A
(Rev.8/82)

Next, Defendant argues that Mr. Kirk and Mr. Mahon stayed two and three nights, respectively. They both attended trial for two days. Plaintiffs have made no showing that Mr. Mahon's extra night was of out of necessity and not mere convenience. The Court concludes that Plaintiffs should only be allowed two nights hotel expenses, not three. Furthermore, these costs shall be taxed at the accepted rate of $141.00 per night instead of the elevated rate charged by the hotels these witnesses chose for their accommodations, rendering the total of witnesses' accommodation expenses $564.00. Thus, the total fees for witnesses, including subsistence and travel, will be $1,066.50.

Defendant further challenges Plaintiffs' fees for exemplification. Defendant is correct that Plaintiffs are required to submit "an itemization and documentation for requested costs in all categories." However, Plaintiffs attached documentation sufficient to support these fees to their response brief, and the Court finds this documentation to be adequate.

Finally, in their Response, Plaintiffs withdrew their claim for "other costs," except for shuttle services and towing expenses. However, Plaintiffs have failed to provide any basis for the recovery of these costs. "Absent explicit statutory authorization, federal courts are limited to the express

provisions of 28 U.S.C. § 1920" and may not tax costs that go beyond the limits of that section.  Goodwall Constr. Co., 824 F. Supp. at 1063.  For this reason, Plaintiffs are not entitled to recover these costs.

For these reasons, Defendant's Motion for Judicial Review of Clerk's Action Taxing Costs [Dkt. No. 217] is **GRANTED**.  Plaintiffs' Bill of Costs shall be amended as specified above, and costs shall be taxed in the amount of $20,675.06.

## Conclusion

In conclusion, Defendant's Renewed Motion for Judgment as a Matter of Law [Dkt. No. 210] is hereby **DENIED**, Defendant's Motion for a New Trial [Dkt. No. 211] is hereby **DENIED**, Defendant's Motion for Judicial Review of Clerk's Action Taxing Costs [Dkt. No. 217] is hereby **GRANTED**, and Defendant's Motion to Stay Pending Appeal [Dkt. No. 218] is hereby **DENIED**.  Plaintiffs' Bill of Costs shall be amended as specified above, and costs shall be taxed in the amount of $20,675.06.

**SO ORDERED**, this   24th   day of July, 2009.

_____
RICHARD W. STORY
UNITED STATES DISTRICT JUDGE

29